# 23-7976

IN THE

## United States Court of Appeals

FOR THE SECOND CIRCUIT

ASHLEY NEWBURY,

*Plaintiff - Appellant,*

- versus -

CITY OF NIAGARA FALLS,

*Defendant - Appellee.*

ON APPEAL FROM A JUDGMENT AND ORDER OF THE UNITED STATES
DISTRICT COURT FOR THE WESTERN DISTRICT OF NEW YORK

# APPELLANT'S REPLY BRIEF

SANDERS & SANDERS
HARVEY P. SANDERS
*Attorney for Plaintiff-Appellant*
401 Maryvale Drive
Cheektowaga, NY 14225
Telephone: (716) 839-1489
Facsimile: (716) 839-1512
Email:
harvey.sanders@wnyemploymentlaw.com

Printed on recycled paper

i

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................... iii

SUMMARY OF THE ARGUMENTS IN REPLY ................................. 1

STATEMENT OF FACTS ................................................................. 1

ARGUMENT................................................................................... 1

I.   THE DISTRICT COURT IMPROPERLY DETERMINED THAT
DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON
PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM........................... 1

   A. Legal Standard ............................................................ 1

   B. Defendant Engaged in Conduct Supporting a Claim of Hostile Work
Environment…………………………………………………………………2

   C. There is a Basis to Impute to Defendant Harassing Conduct of Others…...10

   D. Plaintiff's Hostile-Work-Environment Claims Under NYSHRL Must not be
Dismissed for Lack of Actual Knowledge…………………………………14

II.   THE DISTRICT JUDGE IMRPOPERLY DETERMINED THAT
DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON
PLAINTIFF'S DISCRIMINATION CLAIM....................................................15

   A. Legal Standard .........................................................15

   B. Defendant's stated reason for terminating Plaintiff is pretextual................15

   C. The Termination Decision Was Motivated by Discriminatory Bias............18

III.  THE DISTRICT COURT IMRPOPERLY DETERMINED THAT
DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON
PLAINTIFF'S RETALIATION CLAIM .........................................................20

   A. The City Had "Corporate" Knowledge of Plaintiff's Protected Activity.....21

   B. Plaintiff Successfully Raised a Question of Fact as to Whether Retaliatory
Motive Was the "But For" Cause of Her Termination, Satisfying the Third Step
of McDonnel Douglas…………………………………………………...22

CONCLUSION ...............................................................................24

CERTIFICATE OF COMPLIANCE.......................................................25

## TABLE OF AUTHORITIES

**Cases**

*Alfano v. Costello*, 294 F.3d 365 (2d Cir. 2002) .................................................4, 9

*Banks v. Gen. Motors, LLC*, 81 F.4th 242 (2d Cir. 2023) ...................................... 4

*Bart v. Golub Corp.*, 96 F.4th 566 (2d Cir. 2024)...............................................15

*Bentley v. AutoZoners, LLC*, 935 F.3d 76 (2d Cir. 2019) ...............................11

*Brown v. Coach Stores, Inc.*, 163 F.3d 706 (2d Cir. 1998) ...............................9, 10

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) ...................................... 6

*Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033 (2d Cir. 1993)...........................21

*Duch v. Jakubek*, 588 F.3d 757 (2d Cir. 2009) ...........................................2, 12, 13

*Field v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115
   F.3d 116 (2d Cir. 1997)........................................................................21

*Giurca v. Bon Secours Charity Health Sys.*, 2024 U.S. App. LEXIS 1803
   (2d Cir. 2024) ......................................................................................20

*Gordon v. New York City Bd. of Educ.*, 232 F.3d 111 (2d Cir. 2000) ..............20, 21

*Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545 (2d Cir. 2001)............23

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93 (2d Cir. 2010) .........................23

*Graham v. Long Island R.R.*, 230 F.3d 34 (2d Cir. 2000).........................18, 19, 20

*Gregory v. Daly*, 243 F.3d 687 (2d Cir. 2001) ...................................................... 7

*Howley v. Town of Stratford*, 217 F.3d 141 (2d Cir. 2000)...........................4, 7, 11

*Johnstone v. Vill. of Monticello*, 691 F. App'x 657 (2d Cir. 2017) ....................... 9

*Kwan v. Andalex Grp., LLC*, 737 F.3d 834 (2d Cir. 2013) ...................................23

*Kwon v. Yun*, 606 F. Supp. 2d 344 (S.D.N.Y. 2009)..............................................15

*Lamb v. Household Credit Servs.*, 956 F. Supp. 1511 (N.D. Cal. 1997) ...............14

*Langlois v. Hartford Bd. of Educ.*, 831 F. App'x 548 (2d Cir. 2020)................9, 10

*McAlester v. United Air Lines, Inc.*, 851 F.2d 1249 (10th Cir. 1988) ...................19

*McClellan v. Smith*, 439 F.3d 137 (2d Cir. 2006) ..................................................15

*McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273 (1976) ...........................19

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)..............................19, 20

*Onacle v. Sundowner Offshore Servs.*, 523 U.S. 75 (1998) ................................7, 9

*O'Rourke v. City of Providence*, 235 F.3d 713 (1st Cir. 2001)............................. 8

*Ricks v. Riverwood Int'l Corp.*, 38 F.3d 1016 (8th Cir. 1994)..............................19

*Summa v. Hofstra Univ.*, 708 F.3d 115 (2d Cir. 2013) ............................................ 2

*Summit v. Equinox Holdings, Inc.*, 2022 U.S. Dist. LEXIS 129890 (S.D.N.Y. 2022) ................................................................................................................23

*Torres v. Pisano*, 116 F.3d 625 (2d Cir. 1997) .......................................................13

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)..................................22

*Vance v. Ball State Univ.*, 570 U.S. 421 (2013)...................................................2, 6

*William v. General Motors Corp.*, 187 F.3d 553 (6th Cir. 1999) ........................... 8

*Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59 (2d Cir. 2015)..........................15

*Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834 (2d Cir. 2013) ...........................22

<u>**SUMMARY OF THE ARGUMENTS IN REPLY**</u>

The genuine issues of material facts preclude an award of summary judgment.  Plaintiff-Appellant (hereinafter Plaintiff) was the only female recruit in her academy class, and she was subjected to relentless sexual harassment by fellow recruits and instructors. This tainted the manner in which she was treated and the manner in which her performance was evaluated.  There is a sufficient legal basis to hold Defendant-Appellee (hereinafter Defendant) accountable for the hostile work environment, the discriminatory termination and the retaliation under federal and state law.

<u>**STATEMENT OF FACTS**</u>

Plaintiff refers back to her statement of facts in her initial brief in support of her appeal.  While Defendant may dispute the facts, the parties essentially agree as to what Plaintiff alleges the facts to be.

<u>**ARGUMENT**</u>[1]

**I.    THE DISTRICT COURT IMPROPERLY DETERMINED THAT DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM**

**A. Legal Standard**

For an employer to be held liable under a hostile work environment theory, a plaintiff must establish a "specific basis for imputing the conduct creating a hostile

---

[1] Defendant does not dispute Plaintiff's statement of the standard of review on summary judgment motions generally or for hostile work environment cases specifically.  Accordingly, those issues are not addressed herein.

work environment to the employer." *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009) (internal quotation marks omitted). If the harasser is a supervisor, who is somebody "empowered to take tangible employment actions against the victim," the employer is strictly liable. *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). If the harasser is a non-supervisory co-worker or non-employee, "the employer will be held only for its own negligence, and the plaintiff must demonstrate that the employer failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take remedial action." *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013) (citing *Duch*, 588 F.3d at 762).

The district judge found a reasonable jury could find Plaintiff's alleged treatment at the academy met the standard for a hostile work environment claim. (A438). The district judge also found, however, that Plaintiff failed to show this conduct can be imputed to Defendant. (A440-41). Specifically, the district judge found the alleged statements by Superintendent DalPorto during a single meeting insufficient to support a claim of hostie work environment. *Id.* He further determined no reasonable jury could find Defendant either knew or should have known about Plaintiff's other allegations. *Id.* For the reasons set forth below, this Court should reverse.

## B. Defendant Engaged in Conduct Supporting a Claim of Hostile Work Environment.

Defendant argues that there were only two instances where the conduct of a supervisor may have created a hostile work environment: Plaintiff's meeting with Superintendent DalPorto and Detective Faso, and the firearms training when NCSO Deputy Grapes threatened to cut off Plaintiff's finger. However, contrary to Defendant's contention, the hostile work environment was not confined to these incidents alone; it pervaded Plaintiff's entire tenure at Defendant due to a continuous series of severe and pervasive actions by numerous individuals for which Defendant is liable. Even assuming, *arguendo*, that Defendant's assertion that these two supervisory incidents do not create a hostile work environment, Plaintiff maintains that both incidents support her opposition to summary judgment on her hostile work environment claim.

### i.  *The DalPorto incident created a hostile work environment.*

Superintendent DalPorto, the highest official within the Department, among other conduct, called Plaintiff a "piece of shit" and told her that "he wasn't going to let someone stupid like [her] get one of his boys hurt on the streets." Plaintiff contends that this incident was itself enough to create a question of fact on a hostile-work-environment claim, for which Defendant would be strictly liable because Superintended DalProto was her ultimate supervisor.

Defendant argues Plaintiff faces a very high bar to even create an issue of fact about whether the DalPorto incident can serve as the basis for a hostile-work-

3

environment claim.[2] However, the cases relied upon by Defendant do not support

its argument.  In *Banks v. Gen. Motors, LLC*. In *Banks*, the Court held that:

> A reasonable jury could find that Bank's altercation with Rush in
> 2013 over a personnel dispute rises to this threshold of sufficient
> severity. When Rush confronted Banks over her decision to dismiss a
> contractor for failing to adhere to safety protocols -- a decision within
> her discretion as Safety Supervisor -- he shook a rolled-up document
> in her face and started yelling at her in a loud and aggressive manner.
> Rush could be heard yelling from 50 feet away, his behavior alarmed
> other colleagues, and Banks was so intimidated by his tirade and
> physically threatening demeanor that she eventually withdrew the
> dismissal order.

*Banks v. Gen. Motors, LLC*, 81 F.4th 242, 263-64 (2d Cir. 2023). The Court

reached this conclusion after finding that Bank's incident was similar to an

incident that occurred in the case of *Howley v. Town of Stratford*. *See Id.* at 264.

This Court, in *Howley* held that "a tirade involving "obscene comments" delivered

"at length, loudly, and in a group in which [the plaintiff] was the only female"

precludes a grant of summary judgment on a hostile work environment claim."

*Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000). The Court in

*Howley*, in reaching this conclusion, observed that the challenged conduct directly

impacted the conditions of the Plaintiff's employment because it "forment[ed] [ . . .

] gender-based skepticism as to the competence of a commanding officer, [ . . . ]

---

[2] Defendant cites *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 263 (2d Cir. 2023) (a single incident must be
extraordinarily severe to support a hostile work environment claim, but it need not involve an actual or threatened
physical assault) and *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (citing *Howley v. Town of Stratford*, 217
F.3d 141, 154 (2d Cir. 2000)(a single act can meet the threshold if, by itself, it can and does work a transformation
of the plaintiff's workplace).

diminish[ed] the respect accorder to the officer by subordinates, [and] impair[ed] her ability to lead in the life-threatening circumstances often faced by firefighters." *Id.* at 154. The facts of this case are analogous.

Here, Plaintiff was the only female out of 14 people in her class. Am. Compl. 10. On May 19, 2016, Plaintiff was called into Superintendent DalPorto's office, and when Plaintiff attempted to shake his hand, DalPorto refused and told her "whenever someone gets called into my office it's not for a f\*\*cking good reason so sit the f\*\*\* down." Am. Compl. 42. Superintendent DalPorto proceeded to tell Plaintiff that she had struggled through the academy and he would not allow her onto the streets to get one of his "boys" killed. *Id.* Superintendent DalPorto continued to yell and berate Plaintiff until he told her to "get the f\*\*\* out" of his office. Am. Compl. 44. Just one week later, on May 26, 2016, Plaintiff was dismissed from the academy. Am. Compl. 46. Like in *Howley*, this Court should recognize how the DalPorto incident directly impacted her employment. It showed gender-based skepticism regarding her competence as a police officer and further diminished the respect of Plaintiff by Detective Faso (the academy co-Director who was present). Plaintiff contends a reasonable juror could conclude this incident significantly changed Plaintiff's working conditions to an intolerable degree.

### ii. Deputy Grapes was Plaintiff's supervisor, and his conduct created a hostile-work-environment.

Defendant argues that NCSO Deputy Grapes was not Plaintiff's supervisor because he worked for the County, rather than Defendant. Defendant's interpretation is too narrow. "[A]n employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, i.e., to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998))." While it is true that "the question of supervisor status, can be resolved as a matter of law before trial," the issue of supervisor status cannot be eliminated from the trial "where there are genuine factual disputes about an alleged harasser's authority to take tangible employment actions." *See Vance* at 443-444.

Defendant argues Deputy Grapes lacked the authority to take tangible employment actions against Plaintiff, thereby absolving Defendant of liability for his alleged harassment. However, Deputy Grapes' actions clearly demonstrate his significant authority and control over Plaintiff's work environment. As an instructor he is in the chain of command of the Academy – which is co-sponsored by Defendant. (A38, 62). In that capacity, Deputy Grapes verbally abused Plaintiff, physically assaulted her during training exercises resulting in injury, and

6

threatened her with physical harm during a firearms class. These actions, which included intimidating behavior and physical aggression, created a hostile and unsafe work environment for Plaintiff. Moreover, on May 3, 2016, Deputy Grapes engaged in deliberate acts to physically harm Plaintiff, potentially preventing her from completing required training. Such conduct not only undermined Plaintiff's professional standing but also compromised her ability to perform her duties safely and effectively. The fact that Deputy Grapes did not specifically reference gender does not mean his conduct cannot be sexually harassing.

As the Supreme Court has concluded in *Onacle*, neither "sex-specific and derogatory terms" nor any evidence that "sexual desire" motivated the harassment is needed to prove an actionable hostile work environment. *See Onacle v. Sundowner Offshore Servs.*, 523 U.S. 75, 80-81 (1998). Similarly, this court has found workplace situations discriminatory under a hostile work environment theory where the conduct at issue, though lacking any sexual component or any reference to the victim's sex, could, in context, reasonably be interpreted as having been taken on the basis of plaintiff's sex. *Gregory v. Daly*, 243 F.3d 687, 695 (2d Cir. 2001); *see Howley v. Town of Stratford*, 217 F.3d 141 at 145, 148, 154-55 (2d Cir. 2000) (acts of insubordination, dissemination of untrue rumors about plaintiff, and aspersions on her competence each contributed to a hostile work environment, based on sex, where plaintiff was the only woman among 100 firefighters and

7

other harassing conduct referred to her performance of sexual acts on men); *see also O'Rourke v. City of Providence*, 235 F.3d 713, 730 (1st Cir. 2001) ("Courts should avoid disaggregating a hostile work environment claim, diving conduct into instances of sexually oriented conduct and instances of unequal treatment [ . . . ]"); *William v. General Motors Corp.*, 187 F.3d 553, 565 (6th Cir. 1999) (adopting the proposition that "the conduct underlying a sexual harassment claim need not be overtly sexual in nature" and stating that "*any* unequal treatment of an employee *that would not occur but for the employees gender* may, if sufficiently severe or pervasive under the Harris standard, constitute a hostile environment in violation of Title VII")

Plaintiff maintains that Deputy Grapes was functionally her supervisor, exerting direct control and authority over her employment conditions. Therefore, Defendant cannot evade potential liability for Deputy Grapes' actions under the pretext that he was not employed by Defendant. If anything, the factual evidence presented raises genuine questions about Deputy Grapes' role and Defendant's responsibility for the hostile work environment created by his conduct.

### iii. Defendant's cited cases in support of dismissal of a hostile work environment claim based on a single incident is distinguishable from our current case.

Defendant cited three cases in which the Second Circuit has dismissed hostile work environment claims based on a single incident that were arguably more severe. However, the cases of *Johnstone v. Vill. of Monticello*, 691 F. App'x

8

657 (2d Cir. 2017); *Langlois v. Hartford Bd. of Educ.*, 831 F. App'x 548, 552 (2d Cir. 2020); and *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 713 (2d Cir. 1998), are race-based hostile work environment cases. To decide whether the threshold of "severe and pervasiveness" has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of abuse." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002). The Supreme Court has cautioned that:

> [Title VII analysis] requires careful consideration of the social context in which particular behavior occurs and is experienced by its target. A professional football player's working environment is not severely or pervasively abusive, for example, if the coach smacks him on the buttocks as he heads onto the field--even if the same behavior would reasonably be experienced as abusive by the coach's secretary (male or female) back at the office.

*Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 81 (1998). Although the alleged comments made in *Johnstone* were severe, "they were not made in the context of an employer addressing an employee in the workplace; they were made by an apparently intoxicated citizen who was belligerent because he was being taken into custody and processed for violating the law." *Johnstone v. Vill. of Monticello*, 691 F. App'x 657, 658 (2d Cir. 2017). The bulk of the conduct that the plaintiff in *Langlois* complained of is "reasonably expected in the school working environment: late-night emails about work-related matters, evaluations and follow-up meetings concerning work performance, criticism related to classroom

9

management and teaching, occasional rude interactions with bosses, and placement on a performance support plan after subpar evaluations." *Langlois v. Hartford Bd. of Educ.*, 831 F. App'x 548, 552 (2d Cir. 2020)*.* In the case of *Brown*, the hostile work environment claim was not considered by the district court as it was not plainly articulated in the plaintiff's complaint; furthermore, the plaintiff in *Brown* failed to allege that the remarks made unreasonably interfered with her job performance. *See Brown v. Coach Stores, Inc.*, 163 F.3d 706, 713 (2d Cir. 1998).

Here, Plaintiff brings a gender-based hostile work environment case. Plaintiff has remarked that Defendant's conduct unreasonably interfered with her job performance, is not something to be reasonably expected in her work environment and were made in the context of an employer addressing an employee. Therefore, the cases cited by Defendant are distinguishable from our current case and the facts of our current case should be carefully considered irrespective of the outcomes of those three cases.

**C. There is a Basis to Impute to Defendant Harassing Conduct of Others.**

Plaintiff contends that a long series of comments, interactions, group text messages, and police academy situations created a hostile work environment. Some of this conduct was done by fellow recruits, and some of it was done by academy instructors. With respect to the instructors, Defendant is liable for the same reasons as set forth concerning Deputy Grapes, above.  But Defendant is also

liable for conduct by non-supervisors. This Court has held that an employer can be liable for a hostile work environment claim regarding non-supervisor conduct. *See Bentley v. AutoZoners, LLC*, 935 F.3d 76, 91 (2d Cir. 2019). For the supervisors, the employer is strictly vicariously liable for that supervisor's misconduct. *See Id.* But if the environment was created by a coworker rather than a supervisor, the plaintiff must prove that the employer was negligent regarding the environment or else failed to remedy it once it was brought to the employer's attention. *See Id.* The incidents with Superintendent DalPorto and Deputy Grapes and the other instructors fall under the first category of finding employer liability -- the remaining incidents fall under the second category. Accordingly, the test is whether (1) the employer "failed to provide a reasonable avenue for complaint" *or* (2) "it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000). Here, Plaintiff acknowledges that Defendant provided a policy which could provide a reasonable avenue for complaint. However, in a paramilitary structure, there is an expectation to follow the chain of command – in this case to President Kennedy. Moreover, we contend Defendant should have known about the harassment in the exercise of reasonable care. Defendant states that the "general corporate knowledge" presumption has only been applied to retaliation claims, and that it does not apply to hostile work

11

environment cases. While this is true, a similar presumption exists within the context of hostile work environment claims. *See Duch v. Jakubek*, 588 F.3d 757, 763 (2d Cir. 2009).

Plaintiff contends that Kennedy's role as "class president" and his positions within the "chain of command" provided Defendant with "constructive knowledge" of the plaintiff's reports, even if Kennedy was not technically an "agent" of Defendant and notwithstanding the argument that he did not want to be President. Defendant acknowledged in its motion papers that the Academy was co-sponsored by the City and the NCSO and co-directed by officers from both the City and NCSO. A184. This fact was undisputed. A370. Furthermore, it was undisputed that the Academy's Rules and Regulations were mandatory on all recruits to comply, and that those same rules provided for a chain of command that included the Class President. A62. Superintendent DalPorto testified that the Class President was the liaison between the recruits and the Academy directors, and that recruits traditionally were supposed to bring concerns to the attention of the class president before going to the co-director. A221. Detective Faso essentially confirmed this in his testimony. A249. And because Defendant was responsible for ensuring the recruits received copies of the Rules and Regulations, even if Mr. Kennedy claims he was ignorant of his role in the chain of command, then clearly Defendant was responsible for this failure. *See* A152-53. In short, it was Defendant's

responsibility, rather than Plaintiff's, to ensure that her complaints traveled up the chain of command. It was incumbent on Defendant – through its designated co-Director (and employee of Defendant) Detective Faso – to ensure that everyone in the chain of command fulfilled their responsibilities.

### i.  A similar presumption of "general corporate knowledge" exists within the context of hostile work environment claims, which can be used by Plaintiff to impute Defendant's actual knowledge of the harassment.

While the term "general corporate knowledge" may be limited to retaliation claims, a similar presumption exists within the context of hostile work environment claims. According to the Second Circuit, with respect to imputing the knowledge of employees to an employer:

> An official's actual or constructive knowledge of harassment will be imputed to the employer when principles of agency law so dictate. That will be the case when a) the official is at a sufficiently high level in the company's management hierarchy to qualify as a proxy for the company, or b) the official is charged with a duty to act on the knowledge and stop the harassment, or c) the official is charged with a duty to inform the company of the harassment.

*Duch v. Jakubek*, 588 F.3d 757, 763 (2d Cir. 2009) (citing *Torres v. Pisano*, 116 F.3d 625, 636-37 (2d Cir. 1997) (internal citations and footnote omitted)). For non-supervisory co-workers who "lack authority to counsel, investigate, suspend or fire the accused harasser [ . . . ] the co-worker's inaction does not spark employer liability *unless* that co-worker has an official or strong *de facto* duty to act as a conduit to management for complaints about work conditions." *Torres*, 116 F.3d at

13

636-37 (quoting *Lamb v. Household Credit Servs.*, 956 F. Supp. 1511, 1517 (N.D. Cal. 1997)).

Defendant makes the following statement in its brief: "it is clear from the language in the manual that the class president's role [ . . . ] was to communicate with instructors *on behalf of the class*, on issues having to do with the Academy itself." Defendant's statement gives credence to the argument that the role of "class President" has an official *de facto* duty to act as a conduit to management for complaint about work conditions. Furthermore, as discussed in the section above, Kennedy said he would do something about Plaintiff's complaint.

### D. Plaintiff's Hostile-Work-Environment Claims Under NYSHRL Must not be Dismissed for Lack of Actual Knowledge

Defendants argue that this court should affirm summary judgment in favor of Defendant on Plaintiff's hostile-work-environment claim under NYSHRL because no rational juror could find that Defendant condoned the alleged harassment when it lacked actual knowledge of it. For the reasons stated above, we contend Defendant did have actual knowledge of the harassment. Accordingly, this question should be left for the jury.

## II. THE DISTRICT JUDGE IMRPOPERLY DETERMINED THAT DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DISCRIMINATION CLAIM

### A. Legal Standard

The parties generally agree on the legal standard for gender discrimination claims. We contend Plaintiff established her prima facie case and can prove Defendant's alleged legitimate, nondiscriminatory reason for the adverse decision or action was pretextual. The "plaintiff can survive summary judgment by showing that the employer's stated reason for the adverse employment action is entirely pretextual, or that the employer had mixed motives, one of which was the desire to discriminate." *Bart v. Golub Corp.*, 96 F.4th 566, 573 (2d Cir. 2024) (citing *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 n.13 (2d Cir. 2015)).

### B. Defendant's stated reason for terminating Plaintiff is pretextual

As an initial matter, this Court has held that "[i]t is a settled rule that credibility assessments, choices between conflicted versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks and alterations omitted); *see Kwon v. Yun*, 606 F. Supp. 2d 344, 355-56 (S.D.N.Y. 2009) (a court must neither make judgments regarding credibility or conflicting versions of events, nor engage in any weighing of the evidence, because on summary judgment the court is not tasked with resolving

15

disputed issues of fact, but instead with determining whether any genuine issues of material fact remain to be tried). Here, Defendant must concede there exist genuine issues of fact as to whether Defendant discriminated against Plaintiff -- issues of fact are matters for the jury. At a minimum, there is evidence suggesting Defendant's proffered reason for terminating Plaintiff was pretextual.

Defendant's argument that Plaintiff's termination was based on legitimate, non-discriminatory reasons is fundamentally flawed and does not withstand scrutiny. While Defendant has presented extensive documentation and testimony from instructors and Superintendent DalPorto regarding concerns about Plaintiff's performance, several critical issues undermine the validity of their claims. The purported concerns about Plaintiff's performance were communicated through memoranda drafted by multiple instructors, but these assessments were not always consistent. The sheer volume of memoranda does not inherently validate their content or reflect a uniform evaluation of Plaintiff's abilities. Defendant has not provided concrete, objective evidence demonstrating that these concerns were substantiated or consistently applied across all evaluations. In some instances, her performance was criticized – but in other instances her performance exceeded that of her peers. There is no clear, standardized criteria against which Plaintiff's performance was measured, raising questions about the objectivity and fairness of the assessments. Ultimately, Defendant concedes that Plaintiff fulfilled all of the

requirements to graduate the Academy – but Superintendent DalPorto nonetheless refused to let her graduate. (A426). The timing and nature of the criticisms against Plaintiff raise the possibility that the termination was pretextual because it was tainted by the hostile work environment. It is crucial to examine whether these concerns were raised in good faith or whether they were manufactured to justify a discriminatory decision. If there is evidence suggesting that Plaintiff was subject to disparate treatment compared to other recruits who exhibited similar performance issues but were not terminated, this could indicate that the reasons given were a cover for discriminatory motives.

A legitimate, non-discriminatory termination typically involves providing the employee with clear feedback and an opportunity to address and improve upon their deficiencies. Here, despite the critical memoranda, there appears to be a lack of evidence showing that she was given limited constructive feedback, training, or opportunities to improve her performance before the decision to terminate was made. Here, Plaintiff was not given a fair chance to succeed, as she was instead subjected to a hostile work environment that made it more difficult for her to do so. Because Plaintiff was disadvantaged in terms of resources or support compared to other recruits, this adversely affected her performance. Defendant's failure to ensure equitable training and support undermines the legitimacy of the termination. Plaintiff's employment was terminated based in part on evaluations by supervisors

17

who made discriminatory comments – suggesting Plaintiff's performance issues were a pretext to mask underlying bias.

Therefore, while Defendant has presented evidence of performance concerns, the context, consistency, and fairness of these assessments are questionable. Defendant's reliance on these assessments to justify termination without addressing potential biases or procedural irregularities suggests that the termination may indeed have been discriminatory. Thus, the district judge's conclusion that Defendant met its burden to establish a legitimate reason for Plaintiff's termination should be re-evaluated in light of these factors. If anything, there exist genuine issues of fact that should be reserved for a jury.

## C. The Termination Decision Was Motivated by Discriminatory Bias

Defendant addresses Plaintiff's argument regarding the potential for discrimination influencing Defendant's decision in a rather roundabout manner. First, Defendant makes the argument that Plaintiff failed to identify any similarly-situated comparators. This court, in *Graham v. Long Island R.R.*, recognized "[a] showing that similarly situated employees [outside of the protected group] received more favorable treatment can also serve as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext for [ . . . ] discrimination." *Graham v. Long Island R.R.*, 230 F.3d 34, 43 (2d Cir. 2000). An employee is similarly situated to other employees if they were (1) "subject to

18

the same performance evaluation and discipline standards" and (2) "engaged in comparable conduct." *Id.* at 40. The employee must be similarly situated "in all material respects," *id.* at 39, and the comparison requires "a reasonably close resemblance of facts and circumstances." *Id.* at 40. However, that an employee's conduct need not be identical to that of another for the two to be similarly situated is also reflected in the language of *McDonnel Douglas*, where the Supreme Court used the phrase "comparable seriousness" to identify conduct that might help to support an inference of discrimination. *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973); *see also McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n.11 (1976) ("precise equivalence in culpability between employees is not the ultimate question"); *Ricks v. Riverwood Int'l Corp.*, 38 F.3d 1016, 1019 (8th Cir. 1994) (employing comparable seriousness standard); *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1261 (10th Cir. 1988) (stating that in a disparate treatment case the fact that other employees did not commit the exact same offense as the plaintiff does not prohibit consideration of their testimony as long as their acts were of comparable seriousness).

Here, under this standard, and contrary to Defendant's argument, Plaintiff's argument that Michael Maio is a suitable comparator because he was allowed to graduate from the Academy and become an NFPD officer even though he scored

below Plaintiff on written examinations, failed a physical fitness test, and "was expressly warned that his test average was below the cumulative minimum required," survives (App. Br. at 26). Both Plaintiff and Mr. Maio were subject to the same workplace standards, and the conduct for which the employer imposed discipline was of comparable seriousness. *See Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000).

## III.   THE DISTRICT COURT IMRPOPERLY DETERMINED THAT DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIM

The parties generally agree on the legal standard for retaliation claims. We contend Plaintiff established her prima facie case and can prove that the Defendant knew about her protected activity. Furthermore, we contend that the Defendant's alleged legitimate, non-retaliatory reason for terminating the Plaintiff was pretextual, raising doubts about whether retaliation played a role. To survive summary judgment on a retaliation claim, Plaintiff must present evidence demonstrating that retaliation was a "but-for" cause of the adverse action. *See Giurca v. Bon Secours Charity Health Sys.*, 2024 U.S. App. LEXIS 1803, at *5 (2d Cir. 2024) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)). However, Plaintiff is not required to disprove Defendant's proffered non-retaliatory reasons for its actions. *See Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

20

Under the 1991 amendments, Tite VII "is violated when a retaliatory motive plays a part in adverse employment actions [ . . . ] whether or not it was the sole cause." *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993) (a violation occurs whenever there is "retaliatory animus, even if valid objective reasons for the discharge exist"); *see Field v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 120 (2d Cir. 1997) ("Title VII plaintiff can prevail by proving that an impermissible factor was a 'motivating factor,' without proving that the employer's proffered explanation was not some part of the employer's motivation."). It is therefore now settled that a plaintiff in a Title VII action need not disprove a defendant's proffered rationale for its adverse actions in order to prevail. *See Fields*, 115 F.3d at 120. "The critical question is whether a plaintiff has proven by a preponderance of the evidence that the defendant intentionally discriminated or retaliated against the plaintiff for engaging in protected activity." *Cosgrove*, 9 F.3d at 1039 (internal quotation marks omitted).

## A. The City Had "Corporate" Knowledge of Plaintiff's Protected Activity.

This court has recognized that a plaintiff need not show that the ultimate-decisionmaker knew about the protected activity, and may instead rely on the employer's general corporate knowledge. *See Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000). Plaintiff contends that her reports to Mr.

21

Kennedy provided the City with "general corporate knowledge" because as class president, Mr. Kennedy was in the "chain of command." Furthermore, the Second Circuit has held that a defendant's knowledge may be shown through either "general corporate knowledge" of the protected activity or the defendant's agents having knowledge of the protected activity. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013).

As noted in Point I (c), *supra*, Mr. Kennedy's position of "class president," in conjunction with the notion of "chain of command" in the "Rules and Regulations," should be sufficient to demonstrate that Defendant had knowledge of Plaintiff's protected activity. If anything, there exist genuine issues of fact that should be reserved for a jury.

### B. Plaintiff Successfully Raised a Question of Fact as to Whether Retaliatory Motive Was the "But For" Cause of Her Termination, Satisfying the Third Step of McDonnel Douglas

The Supreme Court held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). However, the but-for causation standard does not alter the plaintiff's ability to demonstrate causation at the *prima facie* stage on summary judgment or at trial indirectly through temporal proximity. *Kwan v. Andalex Grp.,*

22

*LLC*, 737 F.3d 834, 845 (2d Cir. 2013). Therefore, Defendant's argument that Plaintiff's usage of temporal proximity is improper is incorrect. *See Kwan*, 737 F.3d at 845 ("The three-week period from Kwan's complaint to her termination is sufficiently short to make a prima facie showing of causation indirectly through temporal proximity); *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010), *superseded* as stated in *Summit v. Equinox Holdings, Inc.*, 2022 U.S. Dist. LEXIS 129890 (S.D.N.Y. 2022) (the portion that was superseded relates to the 2019 NYSHRL amendment).

As the time between Plaintiff's entering the Academy and her termination was very short (less than four months in total), the timing of Plaintiff's complaints to Mr. Kennedy was indisputably close to her termination. According to the Second Circuit, "[t]hough this Court has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship." *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554-55 (2d Cir. 2001) (citation omitted).

## <u>CONCLUSION</u>

For the aforementioned reasons, Plaintiff respectfully requests this Court vacate the judgment of the District Court dismissing Plaintiff's claims and permit those causes of action to proceed to a trial where their respective unresolved issues of fact may be more fully resolved by a jury.

Dated:  Cheektowaga, NY                Respectfully Submitted,
       July 11, 2024

                                 <u>s/Harvey P. Sanders</u>
                                 Harvey P. Sanders
                                 SANDERS & SANDERS
                                 *Attorneys for Plaintiff-Appellant*
                                 401 Maryvale Drive
                                 Cheektowaga, NY 14225
                                 Telephone:  (716) 839-1489
                                 Facsimile:  (716) 839-1512
                                 harvey.sanders@wnyemploymentlaw.com

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the page limitation of Fed. R. App. P. 32(a)(7)(A) and the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) and Local Rule 32.1(a) because this brief does not exceed 6,500 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. R. App. P. 32(a)(7)(B)(ii), according to Microsoft Word's Word Count function.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced serif typeface using Microsoft Word in plain Times New Roman 14-point font, using italics for case names or emphasis only.

Dated:  Cheektowaga, NY
      July 11, 2024

                                     s/Harvey P. Sanders
                                     Harvey P. Sanders
                                     SANDERS & SANDERS
                                     *Attorneys for Plaintiff-Appellant*
                                     401 Maryvale Drive
                                     Cheektowaga, NY 14225
                                     Telephone:  (716) 839-1489
                                     Facsimile:  (716) 839-1512
                                     harvey.sanders@wnyemploymentlaw.com